**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **84 LUMBER COMPANY, L.P.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:09-cv-1030** |
| **v.** | ) |
| | ) |
| **BRYAN CONSTRUCTION COMPANY** | ) |
| **a/k/a THE BRYAN COMPANY and STEVE** | ) |
| **BRYAN, as personal guarantor,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently pending before the Court for disposition are the MOTION FOR SUMMARY

JUDGMENT (Doc. No. 27), filed by plaintiff 84 Lumber Company, L.P. ("84 Lumber" or

"Plaintiff"); and the MOTION FOR SUMMARY JUDGMENT filed by Defendant, Steve Bryan

("Mr. Bryan" or "Defendant") (Doc. No. 31). The motions have been fully briefed (Doc. Nos.

28, 32, 36, 38, 40, 42, 44, 46) and the factual record has been thoroughly developed via the

submission of the parties' appendices and CONCISE STATEMENTS OF MATERIAL FACT

(Doc. Nos. 29, 33) with responses and opposition thereto (Doc. Nos. 35, 39, 41, 45, 50). Also

pending before the Court is the PLAINTIFF'S MOTION TO STRIKE STEVE BRYAN'S

SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

(Doc. No. 47). Mr. Bryan filed a response in opposition to 84 Lumber's motion to strike (Doc.

No. 48), and Plaintiff filed a reply to defendant's response in opposition (Doc. No. 49).

Accordingly, the motions are now ripe for disposition.

### PROCEDURAL HISTORY

All of the claims, and the basic issues that remain in this lawsuit, flow from the

allegedly binding personal guarantee provision set forth in the parties' June 1999 Commercial

Credit Agreement (the "Agreement") and the unpaid balance on Bryan Construction's account with 84 Lumber. The remaining issue is whether Mr. Bryan can be held personally liable for the unpaid balance on the credit account between 84 Lumber and Bryan Construction along with interest and fees, as provided in the Agreement.

84 Lumber initiated this lawsuit on July 1, 2009, by filing a four-count Complaint against the Bryan Construction Company, Inc. a/k/a The Bryan Company ("Bryan Construction") and Mr. Bryan in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging breach of contract and unjust enrichment claims against both defendants. On August 5, 2009, Defendants timely removed the case to this Court pursuant to 28 U.S.C.A. §§ 1332, 1441 and 1446.

Thereafter, on March 3, 2010, defendant Bryan Construction made an offer of judgment in the amount of $128,033.69, which 84 Lumber accepted. This Court entered final judgment on March 5, 2010 in favor of 84 Lumber and against Bryan Construction only. The Court originally entered judgment on March 4, 2010 against Bryan Construction and Mr. Bryan, as personal guarantor, but amended the judgment upon Defendants' motion, which notified the Court that the Offer of Judgment was not made by Mr. Bryan individually. The judgment remains unsatisfied.

Thus, the only remaining counts in this lawsuit are (1) a breach of contract claim against Mr. Bryan, based on the personal guarantee clause in the Agreement, and (2) an unjust enrichment claim against Mr. Bryan, individually. 84 Lumber demands judgment against Mr. Bryan for the unpaid principle balance of $128,033.69 (*i.e.*, the amount of the Judgment entered against Bryan Construction) with continuing finance/late charges thereon at the rate of 1.5% per month, its attorneys' fees, and other associated costs as provided in the Agreement.

Both parties now move for summary judgment, disputing the application of the personal guarantee provision and the amount of damages, if any, which are to be awarded.

**BACKGROUND**

The following facts are taken from the Court's independent review of the parties' motions, the filings in support and opposition thereto, and the record as a whole. All disputed facts and inferences have been resolved in the light most favorable to the Defendants.

## A. Steve Bryan and The Bryan Construction Company

At all relevant times, Defendant Steve Bryan owned and/or operated multiple construction and contracting companies. More specifically, Mr. Bryan is 100% owner and President of The Bryan Company, which is 100% owner of Bryan Homes, Inc. and Bryan Construction. Mr. Bryan also owns a 99.99% share in Bryan Contractors, LLC, and The Bryan Company owns the remainder. *See* Doc. No. 30 at Ex. 14 (depicting a chart of the corporate structure). All of Defendant's businesses share the same accounting department, officers, and address in Ridgeland, Mississippi.

## B. The Commercial Credit Agreement

On June 24, 1999, Bryan Construction sought to purchase goods on credit from 84 Lumber, a limited partnership engaged in the business of supplying building materials with a principal place of business in Washington County, Pennsylvania. Mr. Bryan, in his capacity as the President of Bryan Construction, completed and executed a Commercial Credit Agreement (the "Agreement") with the company and submitted it to 84 Lumber.

84 Lumber subsequently approved Defendants' application and set an initial credit

limit at $25,000.[1]  Pursuant to the Agreement, Bryan Construction purchased, and 84 Lumber

delivered, various materials on credit between 1999 and 2005.  During this period, 84 Lumber

submitted many invoices to Mr. Bryan's Ridgeland, Mississippi address, which appear to have

been timely paid.  Throughout this time, the parties appear to have engaged in an amicable

business relationship.  In January 2009, Bryan Construction's account became delinquent.  84

Lumber then attempted to collect the unpaid balance from Bryan Construction and now seeks to

enforce the personal guarantee against Mr. Bryan.

### i. Personal Guarantee

Pursuant to the terms of the Agreement, the following personal guarantee appears

immediately above Mr. Bryan's signature on the document:

> **BY SIGNING BELOW I HEREBY CERTIFY THAT I AM A PRINCIPAL OF THE ABOVE BUSINESS AND I DO PERSONALLY GUARANTEE THIS ACCOUNT AND PAYMENT OF ANY SUMS DUE BY THE ABOVE-NAMED BUSINESS, AND THAT I HAVE READ ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THE APPLICATION AND THAT I UNDERSTAND AND AGREE TO THE SAME, AND THAT ALL OF THE INFORMATION CONTAINED IN THIS APPLICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

(Doc. No. 34, Ex. 5) (emphasis in original).  Below the sole signature line, the agreement states

that "[i]f Applicant is a partnership, then all partners must sign the application. If the Applicant is

a corporation, the President must sign the application."  *Id.*  Mr. Bryan agrees that he signed the

document, admits that he was not under duress when he signed the materials, and acknowledges

that he has personally guaranteed numerous ventures in the past.

Mr. Bryan does contend, however, that he did not personally guarantee the Credit

Agreement.  Defendant argues that he signed the document only on behalf of Bryan

---

[1] This credit limit was increased on numerous occasions at the request of a local 84 Lumber
store.

Construction.  Moreover, Defendant alleges that he was not given a choice to sign on behalf of the company only and cites the language below the signature line as support.

Prior to sending the Agreement to Plaintiff Defendant neither attempted to negotiate any language in the Agreement nor submitted any questions or proposals with regard to the application or enforceability of any provision or clause set forth in the Agreement.  When asked "[i]s there a reason why [Mr. Bryan] didn't scratch out that language then," he replied "I don't have a reason."  Doc. No. 30 at Ex. 5, p. 45-46 (reproducing February 23, 2010 deposition of Steve Bryan).  On this record, it is undisputed that a personal guarantee is not required in order to receive goods and materials on credit.  84 Lumber also notes that it has approved many applications where the personal guarantee was not agreed to and stricken.  *See* Doc. No. 30, Ex. 9 (Affidavit of David Svorcek)

### ii. Terms and Conditions

The terms and conditions on the reverse side of the Agreement permit 84 Lumber to charge late fees on the unpaid principal balance plus interest, to recover costs in the event 84 Lumber places the account in the hands of a collection agency or an attorney, and to recover attorney's fees plus costs for all mechanic's liens filed by Plaintiff.  More specifically, the terms and conditions provide, in relevant part, as follows:

> A FINANCE/LATE CHARGE WILL BE ASSESSED AT 1.5% PER MONTH, WHICH IS 18% PER ANNUM, ON THE BALANCE THAT IS PAST DUE . . . IF THIS ACCOUNT IS PLACED IN THE HANDS OF A COLLECTION AGENCY OR ATTORNEY FOR COLLECTION, APPLICANT AGREES TO PAY AN AMOUNT EQUAL TO 15% OF THE UNPAID PRINCIPAL AND INTEREST AS A COLLECTION FEE, WHICH AMOUNT THE APPLICANT AGREES AS REASONABLE.  APPLICANT FURTHER AGREES TO PAY ATTORNEYS FEES AND COSTS FOR ALL MECHANIC'S LIENS FILED BY 84 WHEN ANY PORTION OF APPLICANT'S ACCOUNT BECOMES PAST DUE.

*Id.*  Although Mr. Bryan alleges that he does not recall reading these terms and conditions before

he signed the document, he does admit that he "most likely" read the certification before executing the agreement and that his custom and practice was to either read such documents himself before he signs or to have his attorney read the relevant agreements for him.

Notwithstanding those contractual provisions, Mr. Bryan argues that the Court should limit any damages awarded to 84 Lumber to the initial credit limit, *i.e.*, $25,000. In response, 84 Lumber contends that as of July 22, 2010, Bryan Construction's account was delinquent in the amount of $154,228, that $177,362.92 is due for the debt collection fee and that it has incurred $63,539.00 in attorney fees in prosecuting this action.

## C. The Horizon Project

The primary cause of Bryan Construction's financial problems was the foreclosure of a Memphis, Tennessee condominium project known as the "Horizon Project." *See* Doc. No. 30 at Ex. 12 (reproducing e-mail communications and a newspaper story that depicts the events surrounding the foreclosure). The amounts due 84 Lumber arise out of the Horizon Project.

On July 18, 2005, 84 Lumber began sending its typical account invoices to Bryan Construction for materials ordered for and shipped to the Horizon Project. Between July 2005 and January 2009, 84 Lumber sent sixty-five invoices to Bryan Construction, which were paid in full.

In January 2009, Bryan Construction's account became delinquent. In total, the company failed to make payments on twenty-five Horizon Project invoices, leaving a principal balance of $128,033.69 as of June 17, 2009. It is not disputed that the materials related to the unpaid Horizon Project invoices were sent on behalf of 84 Lumber and received by Bryan Construction. It is also undisputed that 84 Lumber was not paid for those goods and materials. Mr. Bryan acknowledges that Plaintiff is owed $128,033.69.

Federal Rule of Civil Procedure 56 governs summary judgment. In interpreting Rule 56, the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest

on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

When the parties have filed cross-motions for summary judgment, as in this case, the summary judgment standard remains the same. *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F.Supp.2d 425, 430 (M.D.Pa. 2006). "When confronted with cross-motions for summary judgment, . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Id*. (quoting *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 Fed. Appx. 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Id.* (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)).

In response to many of Plaintiff's Concise Statements of Material Fact on the issue of damages, Defendant has denied the allegation and "demand[s] strict proof thereof." Under long-established precedent, such a response does not create a material dispute of fact. In *Houghton v. American Guar. Life Ins. Co.*, 692 F.2d 289, 295 (3d Cir. 1982), the United States Court of Appeals for the Third Circuit explained:

> A mere demand for proof does not create a material issue of fact requiring the denial of a motion for summary judgment. *See, e.g., Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir. 1975) ("Given the opportunity to respond to a movant's affidavits, an adverse party may not rest upon a mere cryptic and conclusionary

allegation in his pleading, but must set forth specific facts showing that there is a genuinely disputed factual issue for trial"); *Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.*, 365 F.2d 742, 747 (3d Cir. 1966) (must present facts which indicates that material issues of fact exist); *Robin Construction Co. v. United States*, 345 F.2d 610, 613 (3d Cir. 1965) (cannot defeat a summary judgment motion by "mere formal denials or general allegations which do not show the facts in detail and with precision").

Similarly, Local Rule 56(E) explains that facts set forth in a Concise Statement of Material Facts will "be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *Accord* Fed. R. Civ. P. 56(e)(2) (2009) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.").

## LEGAL ANALYSIS

As a preliminary matter, the Court notes that jurisdiction in this case is based on diversity of citizenship. 28 U.S.C. § 1332(a). A federal court sitting in diversity must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including its choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In this case, the parties do not dispute that Pennsylvania law applies to this case, and the Court need not engage in a choice of law analysis.[2] *See Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("Because the parties appear to implicitly agree on the applicable choice of law, this Court will not challenge their decision.").

## A. 84 Lumber's Motion to Strike Mr. Bryan's Supplemental Brief in Support of His Motion for Summary Judgment

Before addressing the parties' motions for summary judgment concerning the issue of

---

[2] Paragraph fourteen of the Commercial Credit Agreement Terms and Conditions provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania."

the personal guarantee provision and any potential damages that may be awarded, the Court must first dispose of Plaintiff's motion to strike Defendant's supplemental brief.

According to the Court's scheduling order, briefing on the summary judgment motions was to be concluded within twenty-eight (28) days after Plaintiff's 30(b)(6) deposition. The deadline to file responses to summary judgment motions was an additional twenty-eight (28) days. The parties filed their final summary judgment briefs on September 2, 2010.

On November 3, 2010, Mr. Bryan submitted a Supplemental Brief to notify the Court of a recent decision rendered by the Court of Appeals of Tennessee at Knoxville, which ruled that an analogous personal guarantee provision was not enforceable. *See 84 Lumber Company v. R. Bryan Smith*, No. E2010-00292-COA-R3-CV, 2010 Tenn. App. LEXIS 667 (Tenn. Ct. App. October 28, 2010). 84 Lumber moved to strike the supplemental brief on November 5, 2010 on the grounds that: (1) the case has no controlling or precedential value in this matter because the Tennessee court did not apply Pennsylvania law; (2) Tennessee law and Pennsylvania law differ greatly on the issues before the Court; and (3) the Supplemental Brief was untimely pursuant to the Local Rules of the Western District of Pennsylvania and this Court's practices and procedures that relate to the submission of surreply briefs. In response, Defendant contends that: (1) because the Supplemental Brief is not a surreply brief and therefore, there is no requirement to seek leave of Court and to show good cause prior to filing; (2) the laws of Tennessee and Pennsylvania are consistent; and (3) that the purpose of the Supplemental Brief was to simply notify the Court of recent and persuasive authority.

The *Smith* case was decided after the briefing schedule was completed. Given Defendant's stated purpose for submitting the Supplemental Brief, he was justified in bringing this previously unavailable decision to the attention of the Court. Accordingly, PLAINTIFF'S

MOTION TO STRIKE STEVE BRYAN'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT will be **DENIED**.

## B. Breach of Contract

Plaintiff submits that the June 24, 1999 Agreement is an arms-length contract in which Mr. Bryan assented to a binding and enforceable personal guarantee provision. In support of its position, 84 Lumber alleges that Mr. Bryan is a sophisticated businessman who had equal bargaining power in the transaction and argues that the personal guarantee is clear, conspicuous and unambiguous. Plaintiff also contends that "[o]nce Mr. Bryan agreed to [that] certification, which is evidenced by his signature immediately following the provision, he became personally liable for Bryan Construction's account with, and all sums due to, 84 Lumber." (Doc. No. 28 at 6).

According to Mr. Bryan, the Agreement "is unenforceable because it is a contract of adhesion that contains unconscionable terms." (Doc. No. 32 at 3). Defendant first alleges that the Agreement is a contract of adhesion because Plaintiff prepared and submitted the form contract to him on a "take-it-or-leave-it-basis," and he was "forced to sign the credit application as President of Bryan Construction in order to apply for credit to be extended to Bryan Construction." (Doc. No. 32 at 4). As support, Mr. Bryan points to the language immediately following the signature line, which states that "[i]f Applicant is a corporation, then President must sign the application."

Mr. Bryan then alleges that the Agreement "is also unconscionable because [he] lacked any meaningful choice in his alleged assent to the guaranty provision." (Doc. No. 32 at 4). Defendant contends that the Agreement is unconscionable since it fails to readily disclose the effect that his signature had on his personal liability in a clear and unambiguous manner.

Defendant also argues that the alleged personal guarantee and the language immediately below the sole signature line are "two competing clauses" that render the agreement unconscionable, as he "was forced to sign the one signature line in the space underneath [the personal guarantee] provision because the agreement also expressly required him to sign as President of Bryan Construction." (Doc. No. 32 at 5). Thus, as Defendant reasons, in spite of the personal guarantee, he had no choice but to sign his name to the Agreement on a single signature line; the only place available in the Agreement where he could sign as President on behalf of the applicant, Bryan Construction. In support, Defendant cites the recently decided case, *84 Lumber Company v. R. Bryan Smith*, which ruled that a personal guarantee provision in an analogous 84 Lumber contract was not enforceable. More specifically, the court ruled that the single signature line was not sufficient to hold the company president personally liable since, under Tennessee law, it was necessary for the applicant to sign on behalf of the company and a second time as personal guarantor before the court would find the officer personally liable.

Mr. Bryan also submits that "the unconscionability is not cured by the '**BY SIGNING BELOW**' language, because the signature line directly beneath the guarantee provision was the only place in the Agreement where signature lines appears." (Doc. No. 32 at 6). According to Defendant, the signature line obligated the "Applicant" to sign with no reference to individuals signing as "Personal Guarantor," and thus, the Agreement expressly required him to sign his name as President of Bryan Construction "on a signature line conveniently place below a guarantee provision." (Doc. No. 32 at 6).

Defendant also argues that the guarantee provision is unenforceable because its terms are vague and ambiguous. That is, Mr. Bryan alleges that the "**ANY SUMS DUE**" language is ambiguous "because it does not specify whether there is a continuing guaranty for sums that may

become due at a future date." Defendant suggests that the Court could construe the "ANY

SUMS DUE" language to apply only to the line of credit that was initially approved. Thus, Mr.

Bryan reasons, the Court should construe the language against the drafter, hold that the provision

is unenforceable, and conclude Mr. Bryan is not personally liable for the amount of the

outstanding balance since "the provision does not identify with specificity that the guaranty

obligation included a continuing guaranty of all future debts owed by Bryan Construction."

(Doc. No. 32 at 8). Defendant, in the alternative, suggests that 84 Lumber is barred from seeking

any amount above the initial $25,000 credit limit.

Lastly, Defendant invokes the doctrine of *res judicata* and submits that the judgment

entered against Bryan Construction somehow bars 84 Lumber from seeking a separate judgment

against Mr. Bryan, as personal guarantor. The Court will address Defendant's arguments

seriatim.

To establish a cause of action for breach of contract under Pennsylvania law, a plaintiff

must show: (1) the existence of a valid contract, including its essential terms; (2) a breach of duty

imposed by the contract; and (3) resultant damages. *J.F. Walker Co. v. Excalibur Oil Group,

Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002); *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super.

Ct. 2002). However, in defending a breach of contract suit, a party may invoke the doctrine of

unconscionability, which "has been applied in Pennsylvania as both a statutory and a common

law defense to the enforcement of an allegedly unfair contract or contractual provision." *Salley

v. Option One Mortg. Corp.*, 925 A.3d 115, 119 (Pa. 2007) (citing *Denlinger, Inc. v. Dendler*,

608 A.2d 1061 (Pa. Super. Ct. 1992)); 13 Pa.C.S. § 2302). The Supreme Court of Pennsylvania

admits, however, that it "has not frequently discussed the common-law application." *Id.* at 119.

Nonetheless, that Court "agree[s] with the general formulation which has been applied fairly

consistently in the intermediate appellate courts, and which borrows from the statutory version and is largely consonant with the Second Restatement of Contracts." *Id.*

In turn, Pennsylvania courts have generally recognized two components of unconscionability, "procedural or 'unfair surprise,' unconscionability and substantive unconscionability." *Harris v. Green Tree Financial Corp.*, 183 F.3d 173 (3d Cir. 1999) (citing *Ferguson v. Lakeland Mut. Ins. Co.*, 596 A.2d 883, 885 (Pa. Super. Ct. 1991); *Bishop v. Washington*, 480 A.2d 1088, 1095 (PA. Super. Ct. 1984); *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145-46 (Pa. Super. Ct. 1985)). When a party invokes the doctrine of unconscionability, the burden of proof is "allocated to the party challenging the agreement," *Salley*, 925 A.2d at 120, and to satisfy this burden, defendants must prove both components, *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981). *See Salley*, 925 A.2d at 120 ("[T]he ultimate determination of unconscionability is for the courts.").

The first component, procedural unconscionability, refers "to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Alexander v. Anthony International, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (citations omitted). Generally, a party may satisfy this element "if the agreement is a contract of adhesion." *Id.*; *see also Denlinger*, 608 A.2d at 1066 (noting that "[n]ot every such [adhesion] contract is unconscionable"). A contract of adhesion is "one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Id.*; *see Robson v. E.M.C. Ins. Cos.*, 785 A.2d 507, 510 (Pa. Super. Ct. 2001) ("An adhesion contract is defined as a standard form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who has little choice about the terms.") (citations omitted). "Whether a contract is, in fact, an adhesion contract must be

determined on an individual basis, in light of the particular circumstances and parties involved."
*Denlinger*, 608 A.2d at 1068; *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 182 (3d
Cir. 1999) (collecting cases where courts found procedural unconscionability upon a showing
that the contractual language was inconspicuous or unclear or if the contracting parties had
unequal bargaining power").

The second component, substantive unconscionability, pertains to whether the terms of
an agreement "unreasonably favor one party to which the disfavored party does not truly assent."
*Alexander*, 341 F.3d at 265 (citing *Harris*, 183 F.3d at 181; *Germantown Mfg. Co.*, 491 A.2d at
145-47; *Denlinger*, 608 A.2d at 1068). The Superior Court of Pennsylvania has noted that "the
need for application of this standard is most acute when the professional seller is seeking the
trade of those most subject to exploitation -- the uneducated, the inexperienced and the people of
low incomes." *Germantown Mfg. Co.*, 491 A.2d at 145 (citing *Kugler v. Romain*, 279 A.2d 640,
652 (N.J. 1971)). Indeed, under the standard enunciated in *Denlinger,* an educated and
experienced businessman will face difficulty when invoking this doctrine. *See generally*
*Denlinger*, 608 A.2d at 1067-70 (noting that a commercial contract will rarely be found to be
unconscionable).

In *Denlinger*, a case strikingly similar to the present matter, Brad Dendler ("Dendler")
was the "sole shareholder, president and treasurer of Blue Mountain Development Company,
Inc., a construction company that specializes in residential projects." *Id.* at 1062-63. Upon the
formation of his business, Dendler sought to open a credit account with Denlinger, Inc.
("Denlinger"), a building supply company, and he was given a one page, two-sided credit
application to complete, which included a personal guarantee under the "Terms and Conditions"

on the reverse side of the document. *Id.* at 1063. The only disputed provision was Paragraph 4

on the reverse side of the application form and which stated as follows:

> 4. In consideration of the credit which has been or which may in the future be extended to Applicant, the undersigned, if signing on behalf of a corporation, partnership or other entity, jointly and severally if more than one, hereby personally guarantee(s) prompt and full payment of all accounts now or hereafter owing by Applicant to Denlinger, Inc. The undersigned further agree(s) that the foregoing guarantee is continuing, absolute and unconditional and may be enforced against any of the undersigned, individually, jointly or in any combination, without first proceeding against Applicant and waive(s) any right to be released by reason of any extension of time or change in terms of payment and any other defense now or hereafter available, except the defense of payment.

*Id.* at 1064-54. Dendler signed the form "Blue Mountain Development Corp., Inc. By Brad

Dendler, Pres.," submitted the application and acquired goods on credit for approximately two

years. *Id.* at 1063. Eventually, Blue Mountain filed for bankruptcy and Denlinger sought to

collect from Dendler, under the personal guarantee, the unpaid principal balance that remained

on the account, finance charges and attorney's fees, as provided for in the credit application. *Id*.

Dendler asserted that he never intended to personally guarantee the agreement and argued that

his intention was to sign only on behalf of his company. As affirmative defenses, Dendler

alleged that the credit application was a contract of adhesion and that it was unconscionable. *Id.*

Defendant prevailed at the trial court. On appeal, the Superior Court of Pennsylvania

reversed, first holding that the credit application was not a contract of adhesion. *Id.* at 1066. The

court reasoned that Dendler, as an experienced businessman, had equal bargaining power with

the company and that any suggestion of overreaching was misplaced. *Id.* at 1067. The court

further noted that the credit manager of Denlinger permitted applicants to strike paragraphs on

the reverse side of the agreement and thus, the court reasoned, "it cannot be said that a credit

applicant has no bargaining power and must accept Denlinger's terms." *Id.*

The Superior Court held that the credit application was not unconscionable since

Dendler failed to satisfy the first requirement of the two-prong analysis. *Id.* at 1068. That is, Dendler failed to show that he lacked a meaningful choice in accepting paragraph four of the credit application. The court reasoned that the following facts were fatal to the unconscionability claim of Dendler: he admitted that he never attempted to negotiate or change any terms of the credit application; a Denlinger employee never told him the terms were non-negotiable, or that it was futile to ask about modifying the terms and conditions; "Denlinger is not an exclusive supplier of rare or much-sought-after goods, a situation which could induce one to 'adhere' to an unfavorable contract," and thereby reduce meaningful choice; and Denlinger sells building materials and construction supplies that are readily available from a variety of sources. *Id.* The Court further noted that if Dendler found the terms of credit application onerous, "he was at liberty to seek a credit account elsewhere. Dendler has not alleged that there are no other lumberyards within traveling distance. Nor has Dendler alleged that it would have been futile to seek a credit account elsewhere because the other area supply sources utilized the same standardized credit application." *Id.*

With regard to the personal liability provisions in the Denlinger credit application, the Superior Court held that "in the absence of allegations of fraud or mutual mistake to explain the presence of paragraph four in the credit application, Dendler is bound by his signature." *Id.* Moreover, the Court noted that although Dendler admitted to reading the agreement, this fact may prove immaterial since "'[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains . . . *Ignorantia non excusat*.'" *Id.* at 1069 (citing *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990)). What is required, however, is that the personal guarantee be written in English, have a clear and distinct typeface, lack

technical terminology, be clearly worded, and conspicuously displayed. *Id.*

As in *Denlinger*, 84 Lumber's Commercial Credit Agreement was not a contract of adhesion. Like Dendler, Mr. Bryan is an educated and experienced businessman, having owned and/or operated at least four businesses over the previous decade. Mr. Bryan also had the ability to strike any provisions, such as the personal guarantee clause, from the Agreement. In fact, the credit manager at 84 Lumber has accepted such applications in the past. *Supra* note 3 and accompanying text.

The Court also finds Mr. Bryan's unconscionability defense to be without merit since he fails to meet the first prong of the two-step analysis. In particular, Mr. Bryan can neither demonstrate that he lacked a meaningful choice in accepting the personal guarantee provision in the Agreement nor prove that fraud or mutual mistake explains the presence of the personal guarantee. Additionally, Mr. Bryan does not contend that 84 Lumber is an exclusive supplier of rare goods. If Mr. Bryan found the terms of the Agreement unreasonable, he could have readily acquired building materials elsewhere or obtained a credit account from another company.

Like the defendant in *Denlinger*, Mr. Bryan also admits that he never attempted to strike, negotiate, alter, or eliminate any of the terms, conditions, or clauses contained within the Agreement and concedes that no employee of 84 Lumber ever told him that he could not strike, negotiate, alter, or eliminate anything contained within the application. Mr. Bryan further admits that there is no reason why he did not scratch out the personal guarantee language, which is in simple and understandable English, is offset in capital letters and boldface font, and is conspicuously placed on the front of the Agreement. *Supra* note 2 and accompanying text. Thus, based on the absence of any negotiation between the parties and the lack of any alteration to the Agreement prior to submitting the Agreement, Defendant fails to satisfy his initial burden,

which is allocated to the party challenging the agreement. *See Salley,* 925 A.2d at 120.

Moreover, the Court declines to rely upon the majority opinion of the Court of Appeals of Tennessee in *Smith* and hold that this general inaction did not bind Mr. Bryan to the personal guarantee provision, as the present matter is distinguishable. The Court finds the dissent more persuasive under the facts of this case. Unlike *Smith*, the present Agreement makes no distinction between the terms "Applicant" and "Guarantor." *See R. Bryan Smith*, 2010 Tenn. App. LEXIS 667, at *10. Additionally, as the *Smith* dissent notes, the Court finds that the single signature sufficiently operates to "bind the ABOVE BUSINESS' and to bind him – the 'I' – 'PERSONALLY' on the account . . . ." *R. Bryan Smith*, 2010 Tenn. App. LEXIS 667, at *15 (Susano, J., dissenting in part and concurring in part). Thus, "when he signed the application, he had to have known that the 'I' doing the personal guaranteeing was him.'" *Id*. at **15-16.

In turn, the Court cannot conclude that the "ANY SUMS DUE" language is vague or ambiguous. There is simply no record evidence to suggest that the parties agreed to have the initial credit limit act as a limitation on liability. It was simply not a term of the Agreement and Mr. Bryan cites no authority in support. Rather, he argues that neither Bryan Construction nor Mr. Bryan signed a new credit application or agreement when the Plaintiff internally increased Bryan Construction's credit limit. Plaintiff fails to mention that the Agreement did not contain any mention of a credit limit when he originally signed the application. Further, nothing in the record suggests that increasing the line of credit was anything other than an internal decision made by 84 Lumber employees, which had the effect of allowing Mr. Bryan and his companies to continue acquiring goods and materials from Plaintiff. The personal guarantee also incorporates and references the Terms and Conditions on the reverse side of the agreement that sufficiently outline the rights and obligations of the parties. Therefore, the personal guarantee is

binding and enforceable.

To summarize, there simply is no summary judgment record evidence from which a reasonable factfinder could conclude that Mr. Bryan was either powerless to alter or forced to agree to any term in the Agreement, including the binding and enforceable personal guarantee, prior to 84 Lumber extending credit to Bryan Construction. *See Denlinger*, 608 A.2d at 1068 ("[W]here, as here, a contract provision affects commercial entities with meaningful choices at their disposal, the clause in question will rarely be deemed unconscionable.") (citations omitted). Accordingly, Plaintiff is entitled to summary judgment on its breach of contract claim.

## B. Unjust Enrichment

Under Pennsylvania law, a party is prohibited from recovering under the theory of unjust enrichment if the relationship between the parties is governed by written contract. *Curley v. Allstate Ins. Co.,* 289 F. Supp. 2d 614, 619-20 (E.D.Pa. 2003); *Wilson Area Sch. Dist. v. Skepton,* 895 A.2d 1250, 1254 (Pa. 2006) ("[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract."). That is, plaintiffs may allege alternative claims for breach of contract and unjust enrichment, despite the legal impossibility of recovery under both. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006)

In the instant matter, the Agreement is a valid and enforceable contract and thus, 84 Lumber is entitled to recover on that basis alone. Accordingly, Plaintiff may not recover against Mr. Bryan on both breach of contract and unjust enrichment and 84 Lumber's motion for summary judgment on its unjust enrichment claim is DENIED as moot.

## C. Damages

The only remaining issue is damages. Plaintiff obtained a Judgment on March 3, 2010, which reflected a sum owed by Bryan Construction as of that date.[3] Plaintiff submitted an updated calculation in its Concise Statement of Material Facts, which reflects interest and other associated costs as of July 22, 2010. However, the final calculation of damages is unclear and additional information is necessary.

A cursory review of the amounts claimed throughout the record reflects several discrepancies, including: (1) Plaintiff's Complaint alleges that it seeks to recover compensatory damages in the amount of $128,033.69 with continuing finance/late charges thereon at the rate of 1.5% per month and demands that Mr. Bryan pay its attorney's fees; (2) in Plaintiff's Concise Statement of Material Facts, it seeks to recover a principal balance of $154,228.63 with a 15% charge to be added for a collection fee and notes that it has also incurred an amount of $63,539.00 in attorney fees for which the account is to be charged in accordance with the Agreement; and (3) its memoranda in support of its motion for summary judgment are largely silent on the issue of damages. In sum, it appears that Plaintiff now seeks damages that include the unpaid principal balance plus interest, attorney's fees for the prosecution of the present suit *and* an independent collection fee for placing this debt collection matter in the hands of an attorney. Even if 84 Lumber has the legal authority to recover all amounts claimed, it has not submitted appropriate documentation to demonstrate that its claim for attorneys' fees is reasonable. *See Laborers' Combined Funds of W. Pa. v. Parkins*, No. 01-CV-80, 2002 U.S. Dist.

---

[3] Defendant, relying on the doctrine of *res judicata*, attempts to argue that the Judgment precludes 84 Lumber from pursuing final judgment against Mr. Bryan. Defendant's theory is not persuasive. *C.f. Garcia v. Scoppetta*, 289 F. Supp. 2d 343, 350 (E.D.N.Y. 2003) ("Courts have been reluctant to apply the doctrine of *res judicata* to consent judgments such as those arising under Rule 68."). Moreover, Mr. Bryan specifically notified this Court that he was not a party to the consent judgment.

LEXIS 20035 (W.D. Pa. June 5, 2002).

Further, the Court notes that the last sentence in Paragraph eight of the Terms and Conditions limits Plaintiff's rights to attorney's fees to the costs associated with filing a mechanic's lien. Plaintiff did not quote the entirety of this provision in its Concise Statement of Material Facts (Doc. No. 29 at ¶ 30), wherein it abridges the last sentence of that provision to read "[a]pplicant further agrees to pay attorneys . . . ." In the Agreement, this language is qualified and it actually states that the "APPLICANT FURTHER AGREES TO PAY ATTORNEYS FEES AND COSTS FOR ALL MECHANIC'S LIENS FILED BY 84 WHEN ANY PORTION OF APPLICANT'S ACCOUNT BECOMES PAST DUE." (emphasis in original).

The Court would find it helpful for Plaintiff to clarify the damages it seeks to recover and is hesitant to award a specific monetary judgment based on the existing record. Accordingly, the Court will provide 84 Lumber with a limited time to supplement the record so that a properly calculated amount of monetary damages may be awarded. In accordance with the foregoing, the Court will GRANT Plaintiff's motion for summary judgment as to liability on its breach of contract claim but will defer ruling on the amount(s) owed by Mr. Bryan to 84 Lumber pending further documentation.

An appropriate Order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **84 LUMBER COMPANY, L.P.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:09-cv-1030** |
| **v.** | ) |
| | ) |
| **BRYAN CONSTRUCTION COMPANY** | ) |
| **a/k/a THE BRYAN COMPANY and STEVE** | ) |
| **BRYAN, as personal guarantor,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>ORDER OF COURT</u>

AND NOW, this 14 day of February, 2011, for the reasons set forth in the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** as follows:

(1) the MOTION FOR SUMMARY JUDGMENT (Doc. No. 27) filed by Plaintiff is

**GRANTED** as to liability;

(2) the MOTION FOR SUMMARY JUDGMENT (Doc. No. 31) filed by Defendant is

**DENIED**; and

(3) PLAINTIFF'S MOTION TO STRIKE STEVE BRYAN'S SUPPLEMENTAL

BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT (Doc. No. 47) is

**DENIED.**

On or before February 28, 2011, Plaintiff shall file a brief not to exceed ten (10) pages, with supporting documentation to substantiate its damages under its breach of contract claims. Said submission shall be detailed and precisely itemize all sums which Plaintiff seeks to recover, including reasonable attorney fees.  On or before March 14, 2011, Defendant may file a response, not to exceed ten (10) pages.

BY THE COURT:

/s/ Terrence F. McVerry
United States District Court Judge

Cc:    Mark T. Thirkell
        Email: marc.thirkell@bipc.com
        S. Manoj Jegasothy
        Email: manoj.jegasothy@bipc.com

        James W. Creenan
        Email: jcreenan@creenanlawoffices.com
        Melody McAnally
        Email: melody.mcanally@butlersnow.com